UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,                    Case:  1:16-cr-20625

     Plaintiff,                                 Judge:  Ludington, Thomas L.
     v.                                         MJ:  Morris, Patricia T.

D-1 DENIS BURKE
D-2 MADELINE BURKE
D-3 PARISVILLE DAIRY
D-4 DUNGANSTOWN DAIRY,

     Defendants.

_____/

**MOTION OF DENIS BURKE FOR DISCOVERY**
**CONCERNING SELECTIVE PROSECUTION**

Defendant Denis Burke, through undersigned counsel, moves the Court under the Fifth

Amendment due process clause, United States v. Armstrong, 517 U.S. 456 (1996) and United

States v. Jones, 159 F.3d 969, 975 n. 3 (6th Cir. 1998), for an order requiring production of

materials relevant to his claim that the government selected him for prosecution because of his

national origin.  In particular, the Court should direct the government to produce (1) statistics for

all prosecutions brought under 8 U.S.C. § 1324 against dairy farmers, reflecting the defendant's

national origin; (2) all Department of Justice and Department of Homeland Security –

Immigration and Customs Enforcement policies, directives, and memos of understanding

("MOUs") concerning the prosecution of agriculture employers' cases under § 1324; (3) all

Department of Justice documents that address the decision to prosecute Burke and any other

person changed with employing unauthorized workers in the dairy industry; and (4) all

Department of Justice documents that address the decision not to prosecute the 15-17 other dairy

farmers identified in the underlying investigation alleged to have employed unauthorized workers in the dairy industry.

**MEMORANDUM OF LAW**

The government's decision to prosecute is "subject to constitutional constraints." United States v. Batchelder, 442 U.S. 114, 125 (1979).  Under the equal protection component of the Fifth Amendment due process clause, the government may not choose to prosecute based on an "unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456 (1962).  For a defendant to obtain discovery on a claim that the government has prosecuted him in violation of the equal protection guarantee, he must furnish "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." Armstrong, 517 U.S. at 468 (quotation omitted); see, e.g., United States v. Hastings, 126 F.3d 310, 313-14 (4th Cir. 1997); United States v. Olvis, 97 F.3d 739, 743-44 (4th Cir. 1996).  As set forth below, Burke satisfies both prongs of the Armstrong standard with respect to his claim that the government selected him for prosecution because of his national origin, in comparison to similarly situated dairy farms.

I.      **DISCRIMINATORY EFFECT.**

To satisfy the discriminatory effect prong of the Armstrong standard, the defendant must "produce some evidence of differential treatment of similarly situated members of other races or protected classes." Armstrong, 517 U.S. at 470.  Here, there is evidence (1) that prosecutions against dairy farmers in the Eastern District of Michigan, under 8 U.S.C. § 1324, have focused exclusively on persons of foreign national origin who have allegedly employed dairy workers unauthorized to work in the United States; and (2) that the government has elected not to prosecute native born farmers who also employ such workers.

2

Michigan has nearly 1,800 dairy farm families who care for over 425,000 cows.  *See* Michigan Dairy Facts – United Dairy Industry of Michigan at www/milkmeansmore.org/milk-local/michigan-dairy-facts/, attached hereto as Exhibit 1.  Nationally, there are approximately more than 50,000 dairy operations.  *See* USDA Natural Agricultural Statistics Service at www.nass.usda.gov/Charts_and_Maps/Milk_Production_and_Milk_Cows/cowoper.php, attached hereto as Exhibit 2.  The National Milk Producers Federation estimates that approximately half of all workers on U.S. dairy farms are immigrants.  *See* The Economic Impacts of Immigrant Labor on U.S. Dairy Farms, Texas A&M Agrilife Research, August 2015, attached hereto as Exhibit 3.  While the number of illegal immigrant workers in the dairy industry and overall agricultural industry is unknown, the Department of Labor estimates that of the 2.5 million farm workers in the United States, over half (53%) are illegal immigrants.  *See* H.A. Goodman, Illegal Immigrants Benefit the Economy, The Hill, April 23, 2014, attached hereto as Exhibit 4.  Given these statistics, there is a reasonable inference that hundreds, if not thousands, of dairy operations nationally employ immigrant dairy workers unauthorized to work in the United States.

Nonetheless, we know of only two indictments in the last 8 years charging dairy farmers in the Eastern District of Michigan for violations of § 1324:

- The instant case, in which Burke and his wife, Irish immigrants, and their two dairy farms are charged with illegal hiring practices.

- The case of United States v. Verhaar, Case No. 10-CR-20562 (E.D. Mich.), in which John Verhaar and his wife, Dutch immigrants, and their dairy farm, were charged in 2010 with similar illegal hiring practices at their dairy.

Both cases have charged persons of non-U.S. national origin with a labor practice that is estimated to be taking place at more than 50% of the dairy farms in the U.S. *See* Exhibit 4, above.

As far as our research reveals, in the same time period, the government has never charged any other dairy farmers in the Eastern District or Western District of Michigan under § 1324 for their hiring practices.  In addition, based on our research of filed cases for the same period in both the Western District and Eastern District of Wisconsin, America's Dairyland, we could not find a single prosecution against a dairy farmer for alleged illegal hiring practice under 8 U.S.C. § 1324 or related statute 8 U.S.C. § 1324a.

Strikingly, in this particular investigation dating back to early 2012 based on the discovery provided to Burke to date, the alleged facilitators for the workers at the dairy farms have indicated to the government that they have provided services to workers unauthorized to work in the United States at 15-17 other dairy farms in the Thumb Area of Michigan.  Despite this information, which has been known to the government for years, no other dairy farmers other than the Dutch-born Verhaars and the Irish-born Burkes have been charged with illegal hiring practices.  In the case of United States v. Martinez-Gonzales,  Case No. 16-CR-20146 (E.D. Mich.) the defendant was charged with and convicted of delivering an illegal worker, in actuality an undercover federal agent posing as an illegal worker, to a dairy farmer who specifically requested such worker in Harbor Beach, Michigan.  Even this dairy farmer has not been charged.

Despite the known employment of illegal immigrants on other dairy farms in the Eastern District of Michigan and United States for years, the federal government apparently has not charged a single native born dairy farmer with violations for illegal hiring practices.  At the same

time, the government has obtained two indictments against persons of foreign born origin for engaging in such practices.

Finally, in performing a nationwide search of reported cases involving violations of 8 U.S.C. § 1324, since the enactment of the statute, we could not locate a single other prosecution against a dairy employer.

This evidence – that the government has prosecuted persons of non-U.S. origin who have allegedly hired unauthorized dairy workers but has not prosecuted natural born dairy farmers who have employed the same class of workers – plainly meets the Armstrong threshold on the "discriminatory effect" prong. Burke has produced – at a minimum – "some evidence of differential treatment of similarly situated members of other … protected classes." Armstrong, 517 U.S. at 470. Cases following Armstrong confirm that Burke has satisfied the "effect" standard. In United States v. Jones, 159 F.3d 969 (6th Cir. 1998), for example, the court held that an African-American defendant in a crack cocaine case had satisfied the discriminatory effect requirement by showing that eight non-African-Americans who had been arrested for crack cocaine offenses were not referred for federal prosecution. See id. at 978. In United States v. Tuitt, 68 F. Supp. 2d 4 (D. Mass. 1999), an African-American defendant satisfied the threshold by demonstrating that cocaine charges had been brought in federal court in Massachusetts in 1998 only against non-white defendants, while 10% of the state court cocaine defendants were white. See id. at 7-9. In United States v. Glover, 43 F. Supp. 2d 1217 (D. Kan. 1999), the court granted discovery to an African-American defendant who claimed that the government enforced the federal death penalty selectively against non-white defendants based on a showing that two white defendants charged with drug-related murders were charged in the state court system and that from January 1995 through August 1998, the Attorney General authorized

a greater number of black defendants for death-penalty prosecution than white defendants.  See id. at 1233.  And in Branch Ministries, Inc. v. Richardson, 970 F. Supp. 11 (D.D.C. 1997), the court found some evidence of a discriminatory effect where a conservative church that had opposed Bill Clinton in the 1992 presidential election and later had its tax exempt status revoked by the IRS demonstrated that other religious organizations that had taken positions on the election had either suffered no sanction or a lesser sanction.  See id. at 16.

We have produced more powerful evidence of discriminatory effect than the parties granted discovery in these cases.  We have shown that (1) as far as our research reveals, the only prosecutions brought to date under § 1324 have been against dairy farmers of non-U.S. origin alleged to have hired dairy workers unauthorized to work in the U.S.; and (2) other dairy farms have not been prosecuted, even though the United States government has known of their hiring activities for years.

II.        **DISCRIMINATORY INTENT**.

On the discriminatory intent element of the Armstrong discovery standard, courts have recognized that "[i]t is exceedingly rare for a prosecutor to admit that the decision to prosecute was based on ethnicity or nationality."  Tuitt, 68 F. Supp. 2d at 10; see e.g., Branch Ministries, 970 F. Supp. at 17.  Accordingly, the defendant cannot be expected to show "actual knowledge of a discriminatory choice on the part of a prosecutor," because then "the discovery standards would be impossible to meet."  Tuitt, 68 F. Supp. 2d at 10.  Instead, "evidence concerning unequal application of the law, statistical disparities and other indirect evidence of intent may be used to show bias or discriminatory motive."  Branch Ministries, 970 F.Supp. at 17; see Tuitt, 68 F. Supp. 2d at 10 ("A discriminatory effect which is severe enough can provide sufficient evidence of discriminatory purpose.").  Moreover, "[t]he very rarity of an official act can support

a finding of discriminatory intent, although alone it may not necessarily be a sufficient basis for such a finding." Id.

Here, as in Tuitt, Branch Ministries and Glover, the same evidence that satisfies the Armstrong "discriminatory effect" element also satisfies the "discriminatory intent" element. Specifically, the government has known for at least five years from their cooperating witnesses, who facilitated the location and placement of illegal dairy workers, that 15-17 other farms in the Eastern District engaged in wrongful hiring practices. More globally, the government has known for many, many years that the nation's agricultural and dairy industries routinely hire illegal immigrant labor to feed America.

At the same time, the government has relentlessly investigated and prosecuted persons of non-U.S. origin whom it suspected were engaged in the same hiring practice. Apart from a direct admission, it is hard to imagine more powerful evidence that the government intentionally enforces § 1324 in a discriminatory manner based on national origin. At a minimum, Burke has provided "some evidence" of discriminatory intent, as Armstrong requires.

CONCLUSION

For the foregoing reasons, the Court should enter an order requiring the government to provide discovery relating to Burke's claim that the government has selectively prosecuted him based on his national origin.  Following discovery, Burke should be granted leave to file a motion seeking to dismiss the indictment on the basis that the government's selective enforcement of § 1324 has violated his Fifth Amendment right to equal protection of the laws. Dated May 30, 2017.

Michael Best & Friedrich LLP


*s/Daniel J. Vaccaro*
Daniel J. Vaccaro (SBN 1018037)
100 E. Wisconsin Ave., Suite 3300
Milwaukee, WI 53202
(414) 271-6560
djvaccaro@michaelbest.com
Attorney for Denis Burke, Parisville Dairy,
and Dunganstown Dairy

8

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2017, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to all counsel

of record.

**MICHAEL BEST & FRIEDRICH LLP**


By:/*s/Daniel J. Vaccaro*
     Daniel J. Vaccaro, SBN 1018037
     djvaccaro@michaelbest.com
     100 E. Wisconsin Avenue, Suite 3300
     Milwaukee, WI 53202
     Ph.:  414-271-6560
     Fax: 414-277-0656

208432-0001\20935548.1