UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

D-1 DENIS BURKE
D-2 MADELINE BURKE
D-3 PARISVILLE DAIRY
D-4 DUNGANSTOWN DAIRY,

        Defendants.

Case:  1:16-cr-20625

Judge:  Ludington, Thomas L.
MJ:  Morris, Patricia T.

**DEFENDANTS' MOTION TO DISMISS INDICTMENT, OR IN THE ALTERNATIVE, FOR ADDITIONAL DISCOVERY**

Defendants Denis Burke, Parisville Dairy, and Dunganstown Dairy ("Defendants"), charged with a conspiracy to transport and harbor illegal aliens, 8 U.S.C. §§ 1324 *et seq.*, respectfully move the Court to dismiss the indictment due to the Government's deportation of the alien witnesses whose testimony would be exculpatory and who would have formed the core of the defense.  Many of the fourteen (14) illegal alien employees detained during the execution of search warrants at Parisville Dairy and Dunganstown Dairy (the "Farms"), provided significant statements that are helpful to the defense.  However, the Government has failed to provide the whereabouts of these witnesses, and, likely, deported these individuals without notice to Defendants and a corresponding opportunity for Defendants to interview or depose witnesses with exculpatory evidence.  These actions violate Defendants' rights under the Due Process Clause of the Fifth Amendment and the Compulsory Process Clause of the Sixth Amendment, and the prejudice caused to their defense cannot be alleviated by any relief short of dismissal.

**FACTS**

The genesis of this prosecution was the execution of search warrants on the Parisville Dairy and Dunganstown Dairy on May 22, 2013.  Approximately 60 U.S. Immigration and Customs Enforcement ("ICE") Agents executed the search warrants and took fourteen (14) employees into custody, seized several boxes of employment records, imaged hard-drives, seized approximately twenty cell phones, and seized Denis Burke's then nine-year-old daughter's laptop.

After detaining the fourteen (14) employees, the government interviewed each person. Many of the individuals provided exculpatory evidence regarding Denis Burke's hiring process and his lack of knowledge regarding the illegal status of the employees.  Specifically, Javier Gallegos-Munoz stated, "I work at Parisville farm and was hired 5 months ago. . . .  I was hired by the boss and the manager; they did not know that I was not authorized to work." (Government's Discovery 115, attached as Exhibit 1.)  Rodolfo Christobal-Juarez stated, "Denis hired me.  He didn't know I was unauthorized to work because of my fake ID."  (Discovery 117-18.)  Heriberto Estupian-Renteria stated, "I work at Dunganstown farm and was hired 5 or 6 years ago.  Denis hired me and doesn't know I'm illegal – I told him that I was legal, he thinks that I have papers.  I filled out the top part of the I-9 and showed a green card and social security card." (Discovery 118.)  Arelio Cardenas Lopez stated, "I work at Dunganstown Dairy . . . . My employer filled out the I-9 for me.  I showed a green card and social security card that I bought in Grand Rapids."  (Discovery 118-19.)  Luis Rosales said "that he gave BURKE [a] fake ID and wasn't sure if BURKE knew that he was illegal or not."  (Discovery 119.)  Christobol Justiniano Augustin-Miranda stated, "Denis Burke hired me.  I don't know if he knew I was not authorized to work in the U.S.  Denis Burke asked me to complete an I-9 form.  I showed him documents in

the name of Fidelino Lopez.  Neighbors gave me the documents, I didn't pay for them. . . .  I don't know if the others are illegal." (Discovery 120.)  Mynor Augustin-Miranda stated, "Denis Burke hired me.  He didn't know I was not authorized to work in the U.S." (Discovery 120.)

On November 4, 2016, after receiving ICE investigative reports containing a summary of the interviews from the Government, Defendants requested the whereabouts of the fourteen (14) individuals interviewed.  (Nov. 4, 2016, Letter, paragraph 12, attached as Exhibit 2.)  To date, the Government has failed to provide any information on these individuals' whereabouts, foreclosing the defense's use of this significant exculpatory testimony.

<u>**ARGUMENT AND AUTHORITIES**</u>

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967).  "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process law." *Id.*

The Government's act of deporting a potential witness when it had actual knowledge that the person could provide material exculpatory evidence was in violation of Defendants' respective due process rights and prevents them from presenting their version of the facts. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 874 (1982).  In order to prevail on a *Valenzuela-Bernal* claim, Defendants must show that the Government deported an individual knowing that he or she would be able to give exculpatory testimony, and that the Government's conduct resulted in prejudice to his case.  *Valenzuela-Bernal*, 458 U.S. at 873.

In applying *Valenzuela-Bernal*, the Sixth Circuit has annunciated the following test:

> [I]n order to demonstrate that the government has violated his right of compulsory process a defendant must first make an initial showing that the government acted in bad faith, and, having made that showing, must then make some plausible showing that the testimony of the deported witness would have been both material and favorable to his defense.

*United States v. Damra*, 621 F.3d 474, 489-90 (6th Cir. 2010).  Thus, a party asserting violation of his Fifth and Sixth Amendment rights must first show that the government acted in bad faith, and then show that testimony of the deported witness would be material and favorable to the defense.

The Sixth Circuit has not elaborated on the initial showing of bad faith under the test. However, the Seventh and Ninth Circuits provide guidance on the criteria for "bad faith" under *Valenzuela-Bernal*.  Under Ninth Circuit law, a defendant must show either (1) that the government departed from normal deportation procedures or (2) that it deported the witness to gain an unfair tactical advantage.  *United States v. Pena-Gutierrez*, 222 F.3d 1080, 1085 (9th Cir. 2000).  The Seventh Circuit requires a defendant to show "official animus" or a "conscious effort to suppress exculpatory evidence" to show bad faith.  *United States v. Chaparro-Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000).

Under either iteration of the standard, the element of bad faith is met in this case.  The Government knew from the seminal event of its investigation and has known for nearly four (4) years since that several individuals could provide exculpatory evidence necessary for Defendants' defense.  In fact, the Government interviewed the fourteen (14) individuals detained from the Farms within days of the execution of search warrants.  Several of those individuals provided statements indicating that Defendants were unaware of the individual's immigration status and further, that the employee provided documents indicating that the individual was in fact legally permitted to work in the United States.  The Government therefore knew of the

existence of evidence beneficial to Defendants' version of the facts, but nonetheless permitted individuals with such evidence to be deported. This gives the Government an unfair tactical advantage and suppresses exculpatory evidence. The bad faith prong of *Damra* is therefore established.

Having met the "bad faith" element, the Court must now look to the prejudice caused to Defendants by the deportation. To establish "prejudice," a defendant must at least make "a plausible showing that the testimony of the deported witness would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *Valenzuela-Bernal*, 458 U.S. at 873. Evidence is material if its suppression might affect the outcome of the case. *Id.* at 868.

Here, as indicated above, witness testimony would support the defense in showing that Defendants were unaware that their employees were illegal and that Defendants received documentation indicating that the employees were entitled to work in the United States. This testimony would not be cumulative of the other testimony that will be presented because it provides an inside account of Defendants' hiring processes and employment standards from the perspective of the illegal aliens who worked at the Farms. In addition, it is not cumulative as the Government must prove the Defendants knowledge of the illegal status of each employee they are alleged to have transported, concealed or induced to reside in the U.S. *See* 8 U.S.C. §§ 1324a(a)(1)(B)(i) and (f)(1) (exposing the Defendants to a fine of not more than $3,000 for each unauthorized employee); Government's Bill of Particulars, Docket No. 30.

This case is similar to *United States v. Hernandez*, 347 F. Supp. 2d 375 (S.D. Tex. 2004). In *Hernandez*, the defendant and his niece were indicted for assaulting, interfering with, and resisting a United States Border Patrol agent. *Id.* at 376. The Government and *Hernandez* had

substantially different versions of the event, but a recorded interview of the niece indicated that she would corroborate her uncle's assertion that the Border Patrol agent was the aggressor in the altercation. *Id*. at 377. The Government filed a superseding criminal information reducing the charge for the defendant's niece, to which she pleaded guilty that same day. *Id* at 377-78. She was sentenced to time served and immediately deported. *Id*. at 378. "The Government filed a motion to dismiss the original indictment against [the niece], *but did not send a copy to Defendant's counsel*." *Id.* (emphasis original).

The court held that the Government acted in bad faith when it deported *Hernandez's* niece because, at the very least, "the Government never made any judgment as to whether [the niece]'s testimony could aid Defendant, as required under *Valenzuela*. Moreover, it was clear that the Government knew [the niece] possessed possible exculpatory evidence." *Id*. at 386. Thus, the Government should have given defense counsel notice of the deportation, which it did not. *Id.* Because the defendant made at least a "plausible showing" that the niece's testimony "would have been both material and favorable to [the] defense, in ways not merely cumulative to the testimony of available witnesses," the court granted the defendant's motion and dismissed the indictment.

The Government in this case interviewed fourteen (14) eye witnesses and recorded written summaries of testimony indicating that the witnesses have exculpatory evidence supporting Defendants' defense. The Government then, presumably, deported the witnesses without providing Defendants an opportunity to obtain statements from the individuals prior to deportation. The Government has effectively placed these individuals outside the reach of Defendants, has prejudiced Defendants' abilities to provide an effective defense, and has

therefore violated Defendants' Fifth and Sixth Amendment rights.  The indictment in this case should be dismissed.

## CONCLUSION

The facts of this case demonstrate that the witnesses the Government deported would have been favorable witnesses to the defense and not merely cumulative of the other evidence to be presented.  The deportation of witnesses with favorable and material evidence was done with knowledge that they would likely be Defendants' best witnesses and have prejudiced Defendants' defense to the charges against them.  The Government has removed from the Court's jurisdiction key witnesses to the events charged in the indictment and has thus effectively foreclosed Defendants from presenting those witnesses.  An adversarial system of justice where the Government is allowed to deport and thus prevent the defense from presenting any witnesses whose testimony the Government finds problematic is no adversary system at all. Dismissal is the only sanction which will vindicate Defendants' rights.

WHEREFORE, Defendants respectfully request that this Court dismiss the indictment with prejudice.  In the alternative, Defendants request that the Court order the Government to provide all information regarding the whereabouts of the fourteen (14) individuals detained on May 22, 2013, and subsequently interviewed by Government agents.

Respectfully submitted this 30th day of May, 2017.

- 8 -

**MICHAEL BEST & FRIEDRICH LLP**


By: */s/Daniel J. Vaccaro*
  Daniel J. Vaccaro, SBN 1018037
  djvaccaro@michaelbest.com
  100 E. Wisconsin Avenue, Suite 3300
  Milwaukee, WI 53202
  Ph.:  414-271-6560
  Fax: 414-277-0656

Attorneys for Defendants
Denis Burke, Parisville Dairy, and
Dunganstown Dairy

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

**MICHAEL BEST & FRIEDRICH LLP**

By: /*s/Daniel J. Vaccaro*
Daniel J. Vaccaro, SBN 1018037
djvaccaro@michaelbest.com
100 E. Wisconsin Avenue, Suite 3300
Milwaukee, WI 53202
Ph.:  414-271-6560
Fax: 414-277-0656

208432-0001\20931332.1